890 So.2d 19 (2004)
STATE of Louisiana
v.
Anthony JOHNSON.
No. 04-KA-614.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 2004.
*21 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler, Thomas S. Block, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The defendant, Anthony Johnson, was convicted of armed robbery. He now appeals his conviction. For the reasons which follow, we affirm his conviction of armed robbery and affirm his sentence.

STATEMENT OF THE CASE
On September 19, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Anthony Johnson, with the armed robbery of Wayne Olschner at the Spur filling station at 3220 Jefferson Highway in Jefferson, Louisiana. The defendant was arraigned on September 22, 2003 and he pled not guilty.
Thereafter, defendant filed motions to suppress the identification and the statement. These motions were heard and denied by the trial court on November 19, 2003. Defendant also filed a Motion in Limine seeking to exclude evidence regarding his release from prison immediately prior to the instant offense. The trial court heard and denied this motion on December 16, 2003. On January 21 and 22, 2004, the defendant was tried by a twelve person jury and found guilty as charged.
At trial, the victim, Wayne Olschner, testified that he was working as a cashier at the Spur filling station on August 8, 2003. Before 10:00 p.m., the defendant entered the store and demanded money. The defendant told Olschner "Don't make me kill you." Olschner testified that the defendant held an object in his hand that was covered with a towel. Olschner could not see what the object was but he believed the defendant had a weapon. The defendant repeatedly told Olschner to open the store's safe. Olschner told defendant that he could not open the safe, so the defendant took money from the cash register. The defendant then told Olschner to kneel on the floor. Olschner complied and the defendant then hit Olschner in the head three times with the object wrapped in the towel. Defendant left the store and Olschner called the police.
Detective Dax Russo of the Jefferson Parish Sheriff's Office reported to the scene. He received information from a "citizen" and based on that information he and three other officers went to the Inn Motel. They knocked on the door of room 27. The defendant opened the door and when the officers identified themselves, the defendant responded "All right. Y'all got me." The defendant then asked officers if the papers he had left at the filling station had helped them find him. The defendant referred to an envelope he had left at the robbery scene. His name was written on the outside of the envelope and it contained parole papers bearing a release date of August 8, 2003. The officers *22 then recovered the envelope from the scene.
Russo testified at trial that he secured the defendant for safety reasons and did a cursory check of the room for weapons. No weapons were found and the defendant was advised of his Miranda rights.[1] The defendant indicated that he understood his rights. The defendant then admitted he had gone to the filling station and taken money. He told officers that the money was hidden in an orange bag under the bed. Detective Russo then located a railroad spike and a blue towel in the room, along with the orange bag of money. Officers also found two bottles of Hawaiian Punch soft drink. The orange bag contained $907.00. The orange bag also contained personal letters belonging to the defendant.
Olschner was asked to go to the Inn Motel shortly after the robbery. Officers showed him the defendant and asked if he recognized him. Olschner identified the defendant as the man who had robbed him. Olschner also identified the defendant in court. Olschner testified that bottled Hawaiian Punch is sold at the filling station. Olschner also testified that a video surveillance camera at the store captured the robbery on tape. He testified at trial that the video tape was an accurate depiction of the robbery.
Following his arrest, the defendant was transported to the investigations bureau of the sheriff's office. Russo testified that the defendant was again advised of his rights using a rights of arrestee form. Russo conducted two tape-recorded interviews with defendant. Both tapes, as well as the transcripts of the statements, were admitted into evidence at trial and were played for the jury. During the first interview, the defendant admitted he took the money and the Hawaiian Punch from the filling station but denied having used a weapon. He said the railroad spike was not his and he had gone into the filling station with only a towel wrapped around his hand. During the second interview, the defendant admitted to using the railroad spike during the robbery. He stated he hid it under the towel in order to imply he had a gun.
On January 29, 2004, after the defendant was found guilty of armed robbery, the trial court sentenced defendant to twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The state then filed a habitual offender bill of information alleging that defendant was a third felony offender. The defendant denied the allegation of that bill. A hearing was held on February 2, 2004. The matter was held open for additional witnesses and was completed on August 5, 2004. The matter was taken under advisement and was set for a ruling on August 11, 2004. On that date, the matter was continued until September 15, 2004.
Defendant also filed a Motion to Reconsider Sentence and a Motion for Appeal on February 11, 2004. On February 14, 2004, the trial court heard and denied the Motion to Reconsider Sentence and granted the Motion for Appeal. On appeal, the defendant asserts two assignments of error. First, he argues that the evidence was insufficient to sustain his conviction for armed robbery. Second, he argues the trial court erred in denying his motion in limine and allowing other crimes evidence. Based on the following discussion, we affirm the defendant's conviction and sentence.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant first argues that the evidence was insufficient to support his *23 armed robbery conviction because the state failed to prove he possessed a dangerous weapon, an element of the charged offense. In addition, the defendant argues that the evidence was insufficient to support a responsive verdict of guilty of first degree robbery because the state failed to prove the victim reasonably believed he had a weapon. The defendant asserts that the evidence proved, at most, a simple robbery conviction.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Under LSA-R.S. 14:64, "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Defendant concedes that, when he robbed Wayne Olschner, he held a metal railroad spike wrapped in a towel. In his second police statement, defendant admitted he had wrapped the spike in a towel to imply he had a weapon. He maintains, however, that he did not use the spike as a weapon and that, at most, he was guilty of simple robbery.
The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous. State v. Ellis, 95-1005, p. 4 (La.App. 5 Cir. 3/26/96), 672 So.2d 1007, 1008. A "dangerous weapon" is defined in LSA-R.S. 14:2(3) as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." The "dangerousness" of an object based on the manner in which it is used is a question of fact for the jury. State v. Page, 02-689, p. 15 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 175, writ denied, 03-0951 (La.11/7/03), 857 So.2d 517.
When the defendant has used an inherently harmless instrumentality, the jury must find "`that there was an actual likely danger of serious bodily harm to anyone present in the highly charged atmosphere of the scene of a robbery, taking into consideration the great possibility of violence in the interaction between the offender and the victim thereby put in fear of his life.'" State ex rel. Richey v. Butler, 572 So.2d 1043, 1044 (La.1991) (quoting State v. Bonier, 367 So.2d 824, 826-827 (La.1979)). A victim's subjective belief regarding the dangerousness of the instrumentality is not determinative of the issue of whether it is a "dangerous weapon." Bonier, 367 So.2d at 827.
A railroad spike is dangerous because it can be used as a bludgeon. In this case, it was reasonable for the jury to conclude there was a danger of serious bodily harm to the victim. The defendant denies hitting the victim with the railroad spike, however, Olschner testified that the defendant hit him in the head three times with the object in his hand. The defendant also admitted in his second police statement that he hit Olschner with the spike. In addition, it appears from the surveillance video that the defendant did hit Olschner. The defendant's back was to the camera, therefore, it is difficult to see whether he hit the victim with the spike. We assume the spike was made of metal and Detective Russo described the spike as being six to eight inches long. Olschner *24 only sustained a minor cut, however, the defendant could have inflicted serious injury with the railroad spike.
At trial, the railroad spike was introduced into evidence. The jury viewed the railroad spike, heard testimony of the victim, and reviewed the defendant's statements. Thereafter, the jury concluded that the railroad spike was a dangerous weapon. On appeal, we find the defendant has failed to show a valid basis for disturbing the jury's finding.
The defendant further argues that the state failed to prove armed robbery because Olschner testified he did not see a weapon and defendant never led Olschner to believe he had a dangerous weapon. In State v. Page, 02-689 at p. 16, 837 So.2d at 176 (quoting State v. Cotton, 94-384, p. 3 (La.App. 5 Cir. 11/16/94), 646 So.2d 1144, 1146), this Court held," `Simply because the victim did not see a dangerous weapon does not preclude an armed robbery conviction. When defendant creates an atmosphere of intimidation prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified.'"
Olschner did not testify that he saw the railroad spike. Olschner did testify that the defendant held an object wrapped in a towel and Olschner believed the concealed object was a weapon. Olschner testified that the defendant told him "Don't make me kill you." Olschner testified that he felt threatened and did as the defendant ordered. Based on Olschner's testimony, we find that the defendant did lead Olschner into believing that he had a dangerous weapon even though Olschner never saw the weapon.
In accordance with the above, we find that the evidence was sufficient to prove the dangerous weapon element of armed robbery and to convict the defendant of armed robbery. Therefore, we affirm the defendant's conviction.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant next argues that the trial court erred in denying his motion in limine and allowing evidence showing that he was released from prison on the day of the offense. He asserts that his evidence was inadmissible other crimes evidence. A hearing on the motion in limine was held on December 16, 2003. At that hearing, defendant's counsel asked the court to suppress documents found at the scene of the robbery that showed the defendant had been released from Avoyelles Correctional Center on the day of the offense. Defense counsel also asked that the trial court bar the introduction of statements by the defendant which referenced his prison release. In his first recorded statement, the defendant had described the documents as "parole papers" and told Detective Russo that the papers contained information about his release on that day.
At the hearing, the prosecutor responded that the state was in possession of papers documenting defendant's release from Avoyelles Correctional Center on the day of the offense. The prosecutor further explained that when the officers were investigating the robbery and found the defendant in his motel room, the defendant spontaneously said "You got me. You must have found my papers." The officers asked the defendant what papers he was talking about and the defendant replied, "My release papers." The prosecutor pointed out that defendant's statements alerted the officers to the fact that the defendant had left his prison release papers at the filling station and the officers subsequently recovered the papers.
The prosecutor stated at the hearing that he planned to introduce the release *25 papers and related testimony at trial to show the defendant's continuous course of conduct. He further noted that the release papers did not name the offense for which the defendant was imprisoned, nor did they say he had been convicted of any criminal conduct. Defense counsel argued that even though the papers may have probative value, the documents were prejudicial because they had to do with the defendant's parole. Defense counsel asserted that the prejudicial effect of the release papers and the defendant's statements outweighed their probative value.
The trial court denied the defendant's motion in limine and ruled that the evidence was admissible. The trial court found that the papers were probative because they connected the defendant to the crime scene and the state was entitled to introduce defendant's spontaneous statement as proof that defendant effectively admitted to having been at the filling station. The trial court further ruled that to prohibit portions of defendant's statement from being admitted at the defendant's request would impair the state's ability to meet its burden of proof. The trial court concluded that any prejudice to the defendant would be outweighed by the probative value of the evidence because the documents did not contain any information about a criminal conviction.
At trial, Detective Russo testified that an envelope bearing the defendant's name and dated August 8 was found at the scene of the robbery. Russo testified that when he and the other officers located the defendant, he said "Y'all got me" and he wanted to know if the papers in the envelope had led the officers to him. The packet of papers found at the scene was introduced by the prosecutor. At that time, defense counsel re-urged his objection to any mention of the defendant's statement regarding release papers and to the introduction of the release documents. The trial court overruled the objection. The evidence was then offered and admitted. Defense counsel reiterated his objection for the record.
The prosecutor then asked Russo if he recognized the packet of paper and Russo responded, "It's the envelope that was left on the counter and there's some release papers from the correctional facility where Mr. Johnson was just released from the morning of the robbery." The envelope and the contents were admitted into evidence. Thereafter, the defendant's two statements were admitted into evidence and were played for the jury. Defense counsel re-urged his objections and the trial court overruled them.
On appeal, the defendant again claims that the release documents and his verbal references to them were inadmissible other crimes evidence. He argues that the probative value did not outweigh the prejudicial effect of the evidence. Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial due to the risk of grave prejudice to the defendant. State v. Williams, 01-1007, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030.
LSA-C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
A police officer is not considered a "court official" within the meaning of Article 770. State v. Hayes, 414 So.2d 717, 721 *26 (La.1982); State v. Walker, 03-1072, p. 4 (La.App. 5 Cir. 12/30/03), 865 So.2d 172, 174. But an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the state and, therefore, triggers the provisions of Article 770. State v. Sprinkle, 01-137, p. 20 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, 1144, writ denied, 01-3062 (La.10/25/02), 827 So.2d 1174, cert. denied, 537 U.S. 1235, 123 S.Ct. 1358, 155 L.Ed.2d 200 (2003). It is evident from the record that the prosecutor intentionally elicited the disputed testimony from Russo.
The prescribed remedy under Article 770 for an improper other crimes reference is a mistrial. The article also provides that a defendant may move the court to simply admonish the jury to disregard the objectionable comment. Official Revision Comment (b) to the article provides, "A failure to move for a mistrial is a waiver of the error, since this article requires a motion by the defendant." Defendant did not make a timely motion for a mistrial. Therefore, defendant waived the error and we will not address the merits of defendant's assignment of error. See, State v. Hester, 99-426, p. 21 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 109, writ denied by State v. Patterson, 99-3217 (La.4/20/00), 760 So.2d 342. Accordingly, we affirm the trial court's denial of the defendant's motion in limine.

ERROR PATENT REVIEW
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error is noted by this Court, but no corrective action is necessary. The record does not show that the trial court arraigned defendant following the state's amendments to the bill of information. Defendant proceeded to trial without objection, and he, therefore, waived any irregularity. LSA-C.Cr.P. art. 555; State v. Echeverria, 03-898, p. 11 (La.App. 5 Cir. 11/25/03), 862 So.2d 163, 169. In addition, the amendments to the bill of information were not substantive, so no corrective action is required.
In accordance with the above, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).