960 So.2d 266 (2007)
STATE of Louisiana
v.
Donald D. RAGAS.
No. 07-KA-3.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2007.
*268 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Christopher J. Cox, II, Trial Counsel Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Donald D. Ragas # 481685, Kinder, LA, pro se.
Panel composed of Judges CLARENCE E. McMANUS, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Donald D. Ragas, appeals from his conviction for armed robbery, a violation of La.R.S. 14:64, and his sentence of 30 years at hard labor. We affirm.
The Defendant was charged with the crime in December of 2003. He pleaded not guilty, was tried in March of 2004, and found guilty by a jury. The Defendant's motion for post-verdict judgment of acquittal and motion for new trial were denied in April of 2004. On the same day, the Defendant waived sentencing delays. He was thereafter sentenced to imprisonment at hard labor for 30 years.
FACTS
On August 23, 2003, at approximately 4:00 a.m., Tiffany Gilmore, a shift manager at a McDonalds restaurant in Marrero, Louisiana, and a co-worker were engaged with their duties when an individual wearing black clothing climbed through the drive-through window into the restaurant. According to Gilmore, the individual had a black mask over his face and was holding a black bag. Gilmore and her co-worker ducked down, and the individual walked throughout the restaurant.
When Gilmore heard the individual call for the manager in a "funny type of voice," she got up and walked towards him. While holding a black bag over his hand, the man ordered Gilmore to open the safe located behind the work area, and leave. Gilmore automatically assumed there was a gun in the black bag due to the way the individual held the bag over his hand and pointed it at her. She opened the bottom part of the safe, which had two compartments. Gilmore testified that she was scared, nervous, and shaking.
A few minutes later, the individual ordered Gilmore to open the top part of the safe, which she explained was the place where they usually kept their deposits from the day before. Gilmore complied with that request as well. When he was finished, he instructed Gilmore to open the locked back door. After he left the premises, she locked the door and called the police. When they arrived, Gilmore advised them of what had occurred. She then started moving the cash drawers to put them back in the safe. As she did so, she, Deputy Scott Davis of the Jefferson Parish Sheriff's Office (JPSO), and others present noticed a gun lying in front of the safe. Gilmore testified that the gun was not there before the robbery.
*269 Gilmore could not identify the individual who robbed the restaurant because he was wearing a mask, and she did not recognize the voice. A surveillance camera recorded the events of that morning, and the recording was played for the jury.
JPSO Deputy Steven Wilson testified that two days later, on August 25, 2003, Arie Hayes, the Defendant's wife, reported that her gun had been stolen from her vehicle on August 23, 2003, the day of the robbery. Hayes told him that the stolen weapon was a Hi-Point 9mm, black steel handgun, model number GI1084, and serial number P024337. Deputy Wilson identified the gun found at the crime scene as the stolen weapon.
JPSO Detective Dax Russo testified that the gun trace report showed Hayes as the last registered owner of the gun found at the crime scene. Detective Russo interviewed Hayes in October of 2003. During the interview, Hayes admitted that the Defendant forced her to falsely report the gun stolen. She also admitted that a week after she reported the theft, the Defendant told her he committed the robbery.[1]
The Defendant was subsequently taken to the detective bureau for questioning. Detective Russo and his partner, Detective Jeff Rodrigue, advised the Defendant of his rights. They obtained two statements from him.
In the Defendant's first statement, he admitted committing the armed robbery. He said that he left a strip club at approximately 2:00 a.m., picked up his daughter, and took her home. Afterwards, he went back to the club. He claimed he was with a man named Benny and another man. The Defendant stated that they left the club a second time, picked up his wife at another club at approximately 5:00 a.m., and took her home.
The Defendant then retrieved his car where it had been parked. He went home afterward, and changed into dark colored pants and a dark colored shirt. He also got a dark colored stocking cap that he used to cover his face and a royal blue hat. The Defendant then went to the McDonalds restaurant where he worked as a manager. He parked a block away and entered the restaurant through the drive-through window. The Defendant told Gilmore to open the safe. He had a gym bag in his hand at the time. The Defendant removed approximately $2,000.00 from the safe, putting the money in the bag. Afterwards, he left through the back door and went home. He threw away the clothes he wore and the bag he carried in a trash can near the scene of the crime. The Defendant initially denied having a gun when he entered the restaurant, but he later admitted that he left the gun in the restaurant.
JPSO Sergeant Larry Dyess took another statement from the Defendant in order to obtain additional information regarding the identities of the men the Defendant claimed he was with the morning of the robbery.[2]
In his second statement, the Defendant again admitted that he committed the robbery, that he used a gun, and that he left the weapon at the scene. The Defendant again stated he was with Benny that morning, and that he asked Benny to ride with him to the restaurant so he could rob it. He said that Benny laughed, believing it was a joke. The two men, plus another man named Red, were in his car. The defendant was the driver.
*270 After the Defendant left the restaurant, he ran to the car. Benny was then driving and they slowly pulled off. When the Defendant told Benny that he committed the robbery, Benny did not believe him. Nevertheless, the Defendant said he gave Benny $400.00. He did not give Red anything, because he did not know him well. He reiterated that he forgot to leave with the gun.
At trial, the Defendant denied he robbed the store. He testified he had worked at McDonalds for 16 years, was a manager for 12 or 13 years, and worked for one and one-half years at that particular restaurant. The Defendant was 37 years old, married with four children, and had never been in trouble with the law in the past.
The Defendant testified that he told the police he had taken the gun to work many times. He kept it in the safe or in his brief case. He admitted he was not supposed to bring a gun to work; but he further explained that the restaurant had been robbed before, that he had also been threatened in the past, and that he did not feel safe when making deposits at the bank.
The Defendant claimed that the detectives threatened to beat him up, and coerced him into making a statement. He said that the detectives told him they were going to send his wife to prison, send him to prison for 99 years, and charge him with unsolved robberies. He asserted they also told him that he and his wife would lose their jobs. The Defendant said that the detectives were mean, scared him, and caused him to say things that were not true. He said he fabricated the story about Benny and Red. Although he insisted that the detectives threatened him, he admitted that, at the end of his statement, he told the detectives he had been treated okay.
Detective Rodrigue denied coercing or threatening the Defendant in any way in return for the statement. He further denied promising the Defendant anything.
As manager of McDonalds, the Defendant's net pay was $800.00 or $900.00 every two weeks. The Defendant admitted he was behind on his bills.
ASSIGNMENTS OF ERROR
On appeal, the Defendant's appellate counsel asserts that the evidence was insufficient to support the verdict and that the sentence is excessive. He requests an error patent review.
The Defendant filed a pro se brief. He asserts that he received ineffective assistance of counsel because counsel failed to contemporaneously object to inadequate jury instructions on the responsive verdict of simple robbery. He further asserts that the trial judge erred in admitting his inculpatory statement because it was obtained through coercive methods.
INSUFFICIENT EVIDENCE
The Defendant contends that he should have been convicted of first degree robbery, not armed robbery, because the victim did not see a gun in the possession of the perpetrator, nor did the perpetrator ever mention a gun or threaten to use a gun.[3] He further contends that there was no evidence that any weapon was in the bag at anytime during the robbery. After our review, we find the evidence sufficient to convict.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *271 the evidence is sufficient if the conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Polizzi, 05-478, p. 9 (La.App. 5th Cir.2/14/06), 924 So.2d 303, 310.
To support a conviction for armed robbery, the state must prove beyond a reasonable doubt (1) a taking (2) of anything of value (3) from the person of another (4) by use of force or intimidation (5) while armed with a dangerous weapon. La.R.S. 14:64(A).[4]
La.R.S. 14:2(3) defines "dangerous weapon" to include "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality which in the manner used, is calculated or likely to produce death or great bodily harm. State v. Bonier, 367 So.2d 824, 826 (La.1979); State v. Cotton, 94-384, p. 2 (La.App. 5th Cir.11/16/94), 646 So.2d 1144, 1145.
In Cotton, 94-384 at 3, 646 So.2d at 1146, we held, "Simply because the victim did not see a dangerous weapon does not preclude an armed robbery conviction. When defendant creates an atmosphere of intimidation prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified." See also: State v. Johnson, 04-614, p. 7 (La.App. 5th Cir.11/16/04), 890 So.2d 19, 24.
The "dangerousness" of the instrumentality by reason of the manner in which it is used is a question of fact for the jury to decide. Cotton, 94-384 at 2, 646 So.2d at 1146. However, no weapon need ever be seen by the victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that in fact the defendant was armed with a dangerous weapon. State v. Elam, 312 So.2d 318, 322 (La.1975).
In the instant case, the evidence was sufficient for the jury to conclude that the Defendant was armed with a dangerous weapon. Gilmore testified the Defendant had a bag over his hand pointing at her when he ordered her to open the safe. She automatically assumed there was a gun in the bag because of the way the Defendant was holding it. She did exactly what he wanted because she was scared, nervous, and shaking. The Defendant clearly created an "atmosphere of intimidation." Additionally, the Defendant's wife's gun was found in front of the safe. It was not there prior to the robbery. Finally, the Defendant admitted in his statement that he left the gun in the restaurant after the robbery.
Although the Defendant denied committing the crime at trial, and claimed that the detectives threatened and coerced him into giving an untrue statement, the jury made a credibility determination. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Deruise, 98-0541, p. 26 (La.4/3/01), 802 So.2d 1224, 1243, cert. denied, 534 U.S. *272 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Bates, 03-352, p. 7 (La. App. 5th Cir.7/29/03), 853 So.2d 71, 75; writ denied, 03-2565 (La.2/6/04), 865 So.2d 740.
After our review, we find that the conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of armed robbery beyond a reasonable doubt. See: Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
EXCESSIVE SENTENCE
The Defendant contends that the trial judge failed to consider the mitigating factors applicable to him, including his stable employment history, and the fact that he is a 37 year old married man and father of four children. He is also a first offender, and claims there is virtually no likelihood that he will ever re-offend. He was a manager at the time, and had worked for the company for more than ten years. In a colloquy between the judge and counsel, the Defendant's attorney explained the Defendant kept the gun at the store because he was the manager and used it for protection when making deposits. He submits that the minimum 10-year sentence is warranted in this case. We find no error in the 30 year sentence.
The trial judge stated:
I conclude or I reach that sentencing decision because I feel that the offense was so serious. I do believe that the defendant was armed. I don't have any doubt about that, and all things considered, some of the things that were argued I don't think mitigate  some of them, I believe work against him. I just don't feel that somebody who is the manager of a McDonalds gets a benefit for making that claim when they come back and perpetrate an armed robbery.
(R., p. 384).
The Defendant did not file a motion to reconsider sentence in the trial court below, nor did he object at the time of sentencing as required by La.C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Dupre, 03-256, p. 7 (La.App. 5th Cir.5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La. 1992). Even though a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. Smith, 01-2574 at 6, 839 So.2d at 4.
The trial judge is afforded wide discretion in determining a sentence and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence. Polizzi, 05-478 at 16, 924 So.2d at 313. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might *273 have been more appropriate. Polizzi, 05-478 at 17, 924 So.2d at 314.
The sentencing range for armed robbery is 10 to 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64 B. In State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court found a sentence within the thirty-five to fifty-year range acceptable for first offenders convicted of armed robbery. See also, State v. Wickem, 99-1261, p. 10 (La.App. 5th Cir.4/12/00), 759 So.2d 961, 964, 969, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839 (25 years); State v. Hartwell, 03-1214, p. 12 (La.App. 5th Cir.1/27/04), 866 So.2d 899, 901-902, 907, writ denied, 04-0448 (La.6/25/04), 876 So.2d 832 (35 years).
In the instant case, we find that the 30-year sentence is not constitutionally excessive. Defendant placed the lives of several people he worked with on a daily basis in jeopardy when he robbed his own place of employment with a gun. Additionally, the 30-year sentence is far less than one-half the maximum possible sentence, and the jurisprudence supports the sentence imposed.
INEFFECTIVE COUNSEL
In his pro se brief, the Defendant argues that he received ineffective assistance of counsel because his attorney failed to object to the trial judge's erroneous jury charge regarding the lesser included offense of simple robbery. We find no error in this regard.
The record indicates that the following jury charge regarding simple robbery was given to the jury:
A further responsive verdict to the charge of Armed Robbery is Simple Robbery.
Simple Robbery is the taking of anything of value belonging to another from the person of another or which is in the immediate control of another when the offender uses force or intimidation, but not armed with a dangerous weapon.

Simple Robbery requires general criminal intent.
Anything of value and general criminal intent retain their earlier definitions.
Thus, in order to convict the defendant of Simple Robbery, you must find, beyond a reasonable doubt:
(1) that the defendant intentionally took something of value belonging to another; and
(2) that the thing of value taken was in the possession of or in the immediate control of the victim when it was taken; and
(3) that the defendant used force or intimidation against the victim in order to accomplish the taking, but not while armed with a dangerous weapon.

(R., pp. 79-80) [Emphasis added.]
The record shows that the phrases "but not armed with a dangerous weapon" and "but not while armed with a dangerous weapon" were handwritten as opposed to the remainder of the charge which was typewritten. The Defendant argues that the handwritten phrases were added after the trial judge gave the instructions to the jury, and the record does not indicate that the trial judge, the State, or the defense attorney convened to amend the instructions to reflect that phrase.
The defense counsel did not request the transcript of the trial judge's instructions as he read to the jury. However, the written jury charges are contained in the record.
La.R.S. 14:65 A states that "Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control *274 of another, by use of force or intimidation, but not armed with a dangerous weapon."
The record does not support the Defendant's allegation that the jury charge was modified after it was given to the jury. The minute entry does not state that the amendment was made after the jury was charged, and there is no notation to that effect by the court reporter. Therefore, the Defendant's assertion that it was changed to fit the statute is speculation. Since the written charge recites the provisions of the statute, we conclude that counsel was not ineffective for failing to object to the charge.
INADMISSIBLE STATEMENT
The Defendant argues that the trial court erred in denying his motion to suppress his statement because the detectives coerced him into giving the statement and, therefore, the statement was involuntary. We decline to address this issue.
The Defendant filed a motion to suppress the confession prior to trial. In the motion, he argued that his constitutional rights were violated because his confession was unlawfully and illegally obtained. The trial judge denied the motion as moot, without a hearing, noting that the Defendant alleged only vague and general conclusions and not facts specific to this case.
The record shows that the Defendant did not argue in his motion to suppress that his confession was involuntary because it was coerced. He raises this issue for the first time on appeal. However, the Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time in this Court. State v. Merritt, 04-204, p. 6 (La.App. 5th Cir.6/29/04), 877 So.2d 1079, 1082, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 228. Thus, we will not address this assignment of error.
PATENT ERROR
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337, 338 (La.1975); Polizzi, 05-478 at 18, 924 So.2d at 315. We find no patent errors requiring correction.[5]
DECREE
Accordingly, the Defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] The Defendant's wife was charged with accessory after the fact.
[2] Both audio taped statements were played for the jury.
[3] La.R.S. 14:64.1 A states:

A. First degree robbery is the taking of anything of value belonging to another from the person of another by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
[4] La.R.S. 14:64 states:

A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
[5] As the State noted in its brief, the trial judge failed to impose the sentence without benefit of parole, probation, or suspension of sentence as required by La.R.S. 14:64 B. However, no corrective action is necessary, because the sentence is deemed to contain those restrictions under La.R.S. 15:301.1 and State v. Williams, 00-1725, p. 14 (La.11/28/01), 800 So.2d 790, 801. See also: State v. Mourra, 06-133 (La.App. 5th Cir.8/29/06), 940 So.2d 29, 33, ftn. 5.