9 So.3d 1084 (2009)
STATE of Louisiana
v.
Mozine JOHNSON.
No. 08-KA-1156.
Court of Appeal of Louisiana, Fifth Circuit.
April 28, 2009.
Rehearing Denied May 21, 2009.
*1086 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Desireìe M. ValentiAppellate Counsel, Assistant District Attorneys, Gretna, Louisiana, for Appellee, State of Louisiana.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Appellant/Defendant.
Mozine Johnson, Angola, LA, Defendant in Proper Person.
Panel composed of Judges SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and MADELINE JASMINE, Pro Tempore.
SUSAN M. CHEHARDY, Judge.
On April 8, 2005, the Jefferson Parish District Attorney charged the defendant with four counts of armed robbery, while armed with a dangerous weapon, in violation of La. R.S. 14:64. The defendant was arraigned on all counts on April 11, 2005. A second bill of information was filed on May 8, 2007, alleging four counts of armed robbery when the dangerous weapon was a firearm, in violation of La. R.S. 14:64.3.[1]
On April 13, 2007, a hearing on the motions to suppress the evidence, the statement, and identification was conducted. After hearing the testimony of many witnesses, reviewing exhibits, and hearing oral argument, the court denied all defense motions.
On June 11, 2007, trial commenced against defendant for the armed robberies of Michelle Colbert and Tina Bacon, counts three and four respectively.[2] After hearing *1087 testimony and viewing evidence, a twelve-person jury unanimously found defendant guilty as charged. On July 12, 2007, defendant was sentenced to twenty-five years at hard labor for each armed robbery with a firearm count, to run concurrently, with the "first fifteen years to be served without benefit of parole, probation, or suspension of sentence."
On August 21, 2007, the State filed a habitual offender bill of information alleging that defendant was a second felony offender. On April 10, 2008, after a contradictory hearing, the trial judge found that the State had sufficiently proven that defendant was a second felony offender. After adjudicating defendant a second felony offender, the trial judge vacated his original sentence and imposed an enhanced sentence of forty-nine and a half years at hard labor for the crime of armed robbery with a firearm.[3]
On appeal, defendant seeks review of his convictions and sentences, raising counseled and pro se assignments of error including: the trial judge erred in denying the motion to suppress evidence; defendant's right to a speedy trial were violated; defendant was tried pursuant to a bill of information that was defectively amended; defendant was denied his right to a preliminary examination; and finally, defendant did not receive effective assistance of counsel.
Testimony of witnesses at pre-trial suppression hearings and at trial revealed the following facts. Michelle Colbert testified that, on December 31, 2004, she was the manager at `Mr. Cash' on the Westbank Expressway. About thirty minutes after she opened the store, a middle-aged African-American man in a navy blue suit came into the store and asked about a loan. Colbert, who was the only employee in the store that day, explained the procedure and the man left to purportedly retrieve the necessary documents. When the same man returned about forty-five minutes later, Colbert immediately "buzzed" him into the store since she remembered him from earlier.
As Colbert turned around to get the necessary loan paperwork, the man pulled out a "big silver gun," pointed the gun right at her face, and demanded money. In response to his demands to "give me the f* * *in' money," Colbert removed the entire cash drawer, which contained more than $720.00, and gave it to the gunman. She was unable to reach the panic button under her desk before the robber told her to "pick her hands up" or he would shoot her. That day, Ms. Colbert described the robber as a "black male, clean cut, dark complexion, a little taller than me, medium build, and of middle age."
Lieutenant Daniel Johnson of the Westwego Police Department testified that he investigated the December 31, 2004 armed robbery of the Westbank Expressway location of `Mr. Cash.' The victim, Michelle Colbert, described the robber as an "older black male" between "5'9", 5'11", soft spoken." *1088 She described the weapon as a silver handgun.
At trial, Ms. Colbert identified the surveillance videotape of the incident, which was played for the jury. In this footage, the suspect's head was cut off from the viewable area. Although a full view of the robber was not recorded, the tape revealed shiny buttons on the robber's jacket. Ms. Colbert testified, at trial, that State's Exhibit 16 looked to be the jacket the defendant was wearing at the time of the robbery.
On January 8, 2005, Tina Bacon was working at the Westbank Expressway location of `Mr. Cash.' Shortly after the store opened, a man entered the store, pointed a "large silver gun" at her head, threw a bag on the desk, and demanded money. When Bacon asked him not to hurt her, he told her not to look at him because he would "shoot her in her damn head." She gave him almost $600.00 in cash from the cash drawer. Ms. Bacon described the robber as wearing a baseball hat, a dark jacket, dark pants, tennis shoes, hat, and gold-rimmed glasses.
Detective Gary Barteet of the Westwego Police Department testified that he was the lead investigator of an armed robbery on January 8, 2005 at the `Mr. Cash' location in Westwego, Louisiana. He learned that, just after the store opened for business that morning, a middle-aged black man entered the store brandishing a semi-automatic pistol and robbed the clerk. Detective Barteet and Ms. Bacon identified the video surveillance tape of the January robbery. The tape was played for the jury and later admitted into evidence.
During his investigation, Detective Barteet spoke with another `Mr. Cash' employee, Monique Landry. Ms. Landry testified that she was employed at the Tulane Avenue branch of `Mr. Cash' on December 31, 2004. She received a phone call at the store that morning inquiring about the store's procedures. She described the voice of the caller as male, African-American, "real deep," and a little cracky. The call made her suspicious because the caller specifically asked if the store gave its loans in cash. Because she was suspicious, Landry wrote down the name and telephone number displayed on the store's Caller ID: `Freddie Carter' and `342-1922,' respectively. She gave the note that she had written to Detective Barteet.
Detective Barteet subpoenaed the telephone company's records for the phone number `342-1922.' He learned that the bills for that telephone number, in the name of "Freddie Carter,"[4] were sent to Ms. Rosetta Frazier on Beechgrove Avenue in Westwego. Further, the telephone number is for a landline in Ms. Frazier's apartment. Detective Barteet went to the apartment and met with Ms. Frazier.
Rosetta Frazier stated that she knew the defendant because he was friendly with her sister, Jacqueline Bourgeois, who is also known as "Betty." Ms. Frazier stated that she worked from 7 a.m. until 3 p.m. on weekdays, so if a call was made from her home telephone number during those hours, it was not made by her. Ms. Frazier admitted that Ms. Bourgeois frequented her apartment at that time and the defendant could have been at the apartment, too. When Ms. Frazier reviewed telephone logs from her home telephone number, she saw that a call was made at 9:57 a.m., on December 31, 2004. She denied making that call from her home telephone.
*1089 Based on the information gained from these interviews, Detective Barteet compiled a photographic lineup of suspects that contained the defendant's photograph. When Detective Barteet showed Ms. Bacon the photographic lineup on the afternoon of the robbery, she positively identified the defendant as the man that had robbed her at the Westwego `Mr. Cash' that morning.
After the second armed robbery of the same store, Lieutenant Johnson suspected that the same man had committed both crimes. He also compiled a photographic lineup that contained defendant's picture. When he showed the lineup to Michelle Colbert, she identified defendant as the man that robbed her at gunpoint on December 31, 2004.
Based on the positive identification of the defendant by the victims, the Westwego Police obtained a warrant for the defendant's arrest. On or about February 10, 2005, officers from the New Orleans Police Department arrested defendant in Orleans Parish at 400 North Galvez, Apartment 3, which was Jacqueline `Betty' Bourgeois' apartment.
Detective Todd Rivere, who was with the Westwego Police Department on February 10, 2005, accompanied his partner, Detective Barteet, to conduct a search of that apartment. After advising her of her Miranda rights, the two detectives spoke with Ms. Bourgeois. She told them that she was the only lessee and only resident of the apartment. She did admit that defendant frequented her apartment but denied that he resided with her. Both detectives testified that Ms. Bourgeois consented verbally and in writing to a search of her apartment. When the officers searched the apartment, they found men's items in one corner of the bedroom. From that corner, the officers seized, among other things, a men's blue blazer, baseball caps, and eyeglasses.
At trial, Ms. Colbert and Ms. Bacon both identified the defendant, in court, as the armed robber of `Mr. Cash' in Westwego. After hearing the testimony and reviewing the evidence, the jury unanimously found defendant guilty as charged on both counts of armed robbery.
In his only counseled assignment of error, defendant argues that the trial judge erred in denying the Motion to Suppress the evidence obtained pursuant to purported consensual search of the apartment on Galvez Street. He specifically argues that his jacket was improperly seized by police from the home of Ms. Bourgeois. He contends that, while Ms. Bourgeois may have consented to the search of the home, he did not. He further contends that the Westwego Police Officers purposely prevented him from objecting to the search by having him arrested before arriving to begin the search.
The Fourth Amendment to the United States Constitution and Article I of Louisiana's Constitution prohibit police from making a warrantless entry into a private dwelling. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Evidence that is derived from an unreasonable search or seizure will be excluded at trial. Id. Warrantless searches and seizures are unreasonable per se unless justified by one of the exceptions to the warrant requirement. State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, 335.
One exception to the warrant requirement is where voluntary consent has been obtained, either from the property owner or from a third party who possesses common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). In order to *1090 rely on consent to justify a warrantless search, the State has the burden of proving that consent was given freely and voluntarily. State v. Joseph, 04-1240, p. 10 (La.App. 5 Cir. 4/26/05), 901 So.2d 590, 597, writ denied, 05-1700 (La.2/3/06), 922 So.2d 1176. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. Id.
Where the prosecution seeks to justify a warrantless search by proving voluntary consent, it may show that permission to search was obtained from a third party who possessed common authority over (or other sufficient relationship to) the premises sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). In Matlock, the Supreme Court of the United States clarified that someone who has common authority over a residence, described as "mutual use" and "joint access and control for most purposes," may consent to a search that is valid against a co-occupant. State v. Nicholas, 06-903 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. A warrantless search may be valid even if consent was given by one without authority, if the facts available to police officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. State v. Cambre, 04-1317 (La.App. 5 Cir. 4/26/05), 902 So.2d 473, 482, writ denied, 05-1325 (La.1/9/06), 918 So.2d 1039 (citations omitted).
At the suppression hearing, Deputy Todd Rivere, who was Detective Barteet's partner, testified that New Orleans police informed him by telephone that they had arrested the defendant. By the time the Westwego police arrived, the defendant was in the custody of the New Orleans Police Department. Defendant was not inside the apartment when the Westwego officers arrived.
Detective Barteet testified that Ms. Bourgeois informed them that she was the sole lessee of Apartment 3 at 400 North Galvez. Ms. Bourgeois alone had dominion and control over the apartment. She stated that defendant stayed with her sometimes and kept some of his belongings at her apartment but did not live with her. She also indicated that no area in the apartment was beyond her access.
At trial, Deputy Rivere stated that there was a small corner in the bedroom that had a rack containing men's clothes. Deputy Rivere also stated that Ms. Bourgeois told the police that this area was for Mr. Johnson. He added that the lessee specifically informed him that Mr. Johnson sometimes frequented the apartment but was not a resident.
Ms. Bourgeois gave police verbal and written consent to search her home. The consent form was entered into evidence at trial. Finally, neither officer was aware that the defendant raised an objection to the search.
Here, the defendant argues that the search should have been suppressed because he was under arrest, and therefore precluded from objecting to the search, when his girlfriend gave consent to search their dwelling. The defendant argues that the search was contrary to the spirit of Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). We disagree.
In Randolph, the Supreme Court of the United States held that when law enforcement officers conduct a search, authorized by one co-occupant, over the express objection of another co-occupant, any further search would be unreasonable as to the objecting co-occupant. In our case, there is no indication that defendant was a "co-occupant," *1091 but rather an occasional visitor. Further, the record does not reflect that defendant "expressly objected" to this search. We decline to extend the Supreme Court's ruling in Randolph beyond its facts.
We find this factual scenario is much closer to Matlock, supra. In that case, the defendant was arrested in the front yard of a house and detained in a squad car nearby. While standing at the doorway of the house, police officers, without asking Matlock, obtained consent to search the premises from a woman with whom he lived.
Regarding defendant's contention that he was purposely removed from his apartment upon arrest to prevent him from objecting to the search, we turn to United States v. Hicks, 539 F.3d 566 (7th Cir.8/20/08). In Hicks, the defendant and his girlfriend shared an apartment. The police, investigating a shooting, went to the apartment to obtain consent to search. Upon arrival, the police arrested the defendant on two outstanding arrest warrants and removed him from the premises. The police obtained consent to search from the girlfriend, search led to the discovery of illegal weapons. The Hicks court found that the officers removed the defendant in order to arrest him, not in order to avoid his objection to the search. Id. at 570.
In this case, we find, as in Hicks, that the officers did not remove defendant to avoid his objection to the search. The officers legally arrested and removed defendant based upon a valid arrest warrant. Once he was removed, the apartment lessee's consent was valid and legally permitted the police to search the entire residence. We find no error in the trial court's denial of defendant's motion to suppress evidence. This assignment of error lacks merit.
In his first pro se assignment of error, defendant argues that he was "never given a chance" to cross-examine Ms. Bourgeois regarding her consent to search the apartment and, thus, the search cannot be valid. He contends that Ms. Bourgeois, who was named as a witness in his case, was not called at trial. He states that the detectives mentioned that she signed the search warrant but he was "never given a chance to be cross-examine" Ms. Bourgeois.
The defendant provides no legal or factual support for his argument. He clearly had a right to compel the attendance of witnesses.[5] He asserts no impediment to calling this or any other witness during his trial. We can see no basis for granting relief on this claim.
In his second pro se assignment of error, defendant argues that his pro se motion for speedy trial should have been granted. La.C.Cr.P. art. 701 provides that both the state and defendant have a right to a speedy trial. La.C.Cr.P. art. 701D(2) establishes that the sole remedy for failure to commence trial within the mandatory time limit is pretrial release without bail, "if after contradictory hearing with the district attorney, just cause for the delay is not shown."[6] In State v. Cowger, 581 So.2d 283, 286 (La.App. 5 Cir.1991), this Court noted that any rights under this article become moot after conviction. Thus, even if defendant's right to a speedy trial was violated, the issue became moot after his conviction. We can see no basis for granting relief on this claim.
*1092 In his third assignment of error, the defendant argues that the amendment to the bill of information was defective and he should have been given a continuance to prepare a defense to the new bill of information.[7] The defendant, however, did not object to the amendment of the bill of information nor did he request a continuance to prepare a defense to the amended charges. La.C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The article further provides that "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore." Defendant's failure to object to the amendment of the bill of information and/or to request a continuance precludes relief on this claim.
In his fourth pro se assignment of error, defendant states, as follows: "Constitution of La. Section 14. The right to a Preliminary Examination shall not be denied in felony cases except when the accused is indicted by a grand jury."
On June 28, 2006, counsel filed, along with a number of other motions in his omnibus motions, a request for a preliminary examination, alleging that the arrest was without probable cause. The individual defense motions were set for hearing on several occasions, but apparently, the motion for preliminary examination was never resolved in court.
Under the provisions of La. C.Cr.P. art. 296, if a defendant has not been indicted, the court shall, at the preliminary examination, order his release from custody, if, from the evidence adduced, it appears that there is not probable cause to charge him with the offense or a lesser included offense. The lack of a preliminary examination is not a fatal defect in light of the defendant's conviction after trial by jury. See State v. Gates, 24,995 (La.App. 2 Cir. 1/19/94), 630 So.2d 1345, writ denied, 94-0640 (La.6/17/94), 638 So.2d 1091; State v. Wright, 564 So.2d 1269 (La.App. 4 Cir.1989).
In this case, the defendant proceeded to trial without insisting that a preliminary examination be held. Furthermore, he has not shown, or even asserted, any type of prejudice from the lack of a preliminary examination. This assignment of error lacks merit.
In his final pro se assignment of error, the defendant argues that he received ineffective assistance of counsel at trial. He specifically argues that his attorney admitted at trial that the defendant had been to Angola for a previous conviction for armed robbery.
It is fundamental that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 681, writ denied, 99-2853 (La.1/5/02), 778 So.2d 587.
To establish ineffective assistance of counsel, a defendant must prove both that 1) his attorney's performance was deficient, and 2) he was prejudiced by the deficiency. Strickland v. Washington, 466 *1093 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. An error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 686, 104 S.Ct. at 2064. Prejudice is shown when the defendant demonstrates that but for counsel's unprofessional conduct, the outcome would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Soler, supra at 1075.
In order to prevail, the accused must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; specifically, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel, because "opinions may differ on the advisability of such a tactic." State v. Singleton, 05-634, p. 11, (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 811.
A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Mclntyre, 97-876 (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, such claims may be addressed on appeal in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993).
It is well established that "hindsight is not the proper perspective for judging the competence of counsel's trial decisions. An attorney's level of representation is not determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), citing Strickland v. Washington, supra. If an alleged error is part of counsel's trial strategy, it does not establish ineffective assistance of counsel. State v. Esteen, 02-1241, p. 6 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 174, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978.
Here, defendant argues that, during closing argument, his attorney told the jury that defendant had previously been incarcerated for armed robbery. Defendant does not support his allegation with reference to the record. In fact, the transcript reveals that defense counsel asked one of the investigating detectives if the officer knew about defendant's prior conviction for armed robbery. The detective denied any knowledge of defendant's prior conviction. Furthermore, even if we were to determine that counsel made such a statement during closing arguments, we cannot say that this statement was not a strategic trial decision by counsel.
Finally, as is our customary procedure, we have reviewed the record for errors patent, as required by La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We have found an error patent that requires remand for resentencing.
First, armed robbery is punishable by imprisonment at hard labor for not less than ten nor more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). La. R.S. 14:64.3 punishes armed robbery with a firearm by an additional *1094 five-year term of imprisonment, to be served without benefit of parole, probation, or suspension of sentence. Clearly, neither statute allows for any portion of the sentence to be imposed with benefits. In this case, the trial judge imposed sentence, on count four, of twenty-five years at hard labor, with fifteen years without benefits. No corrective action is required, however, as the entirety of defendant's sentence is deemed to contain the restrictions set forth in the applicable statute. La. R.S. 15:301.1;[8]State v. Payne, 06-378 (La.App. 5 Cir. 10/31/06), 945 So.2d 749, 752, n. 2; State v. Ellington, 04-654 (La.App. 5 Cir. 11/30/04), 889 So.2d 1146, 1150, n. 2.
Second, the restrictions on benefit eligibility imposed on habitual offender sentences under La. R.S. 15:529.1 "are those called for in the reference statute." State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 79, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983. In this case, the underlying armed robbery statute, La. R.S. 14:64(B), mandates that the sentence be served without benefit of parole, probation, or suspension of sentence. Again, it was error not to prohibit benefits on the enhanced sentence, but this error does not require remand because the provision is self-activating. La. R.S. 15:301.1; Payne, 945 So.2d at 752, n. 2; Ellington, 889 So.2d at 1150, n. 2; Esteen, 821 So.2d at 78.
However, we find that the current sentences for count three and the enhanced sentence for count four are indeterminate because the trial judge did not impose the mandatory five-year firearm enhancement. In this case, the defendant was convicted of committing two armed robberies with a firearm. Under the provisions of La. R.S. 14:64.3(A)[9] effective at the time of the offense, he was subject to the following additional penalty:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64. (Emphasis added.)
Despite the mandatory language of the penalty provision, the trial judge failed to impose separate, consecutive sentence enhancements as required by La. R.S. 14:64.3. Moreover, the imposition of consecutive sentences applies to the enhanced sentence imposed under La. R.S. 15:529.1, when the underlying conviction is a violation of La. R.S. 14:64.3. State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228, 1232. For this reason, we find the sentences are indeterminate and remand for resentencing *1095 on both counts as well as the multiple offender adjudication.
CONVICTIONS AND ADJUDICATION AFFIRMED; AND REMANDED FOR RESENTENCING.
JASMINE, J., concurs with reasons.
JASMINE, J., concurs with reasons:
I agree with the majority's decision resulting in the affirmation of defendant's convictions; however in my opinion, defendant's claim of ineffective assistance of counsel would be best handled in an application for post-conviction relief which would include an evidentiary hearing.
NOTES
[1] On the first day of trial, the prosecutor withdrew the second bill of information (dated May 8, 2007), and amended the original bill of information to charge defendant with four counts of violating "La. R.S. 14:64.3" and to add the words "or firearm" to each count. The defendant was not re-arraigned on the amended charges. Defendant, however, proceeded to trial without raising an objection, and, thus, waived any irregularity. La.C.Cr.P. art. 555; State v. Johnson, 04-614 (La.App. 5 Cir. 11/16/04), 890 So.2d 19, 26.
[2] On January 24, 2008, the trial court denied the State's Motion for Continuance on counts one and two. The State then nolle prossed these armed robbery counts.
[3] On April 15, 2008, the court held an additional hearing on defendant's enhanced sentence; neither the defendant nor his attorney were present for this hearing. In this hearing, the prosecutor asked that the court amend the commitment order to clarify that the defendant was multiple billed on the third count and that the original sentence on count three only was vacated. The court reiterated that the defendant's sentence was forty-nine and a half years at hard labor for the crime of armed robbery charged in the third count and to twenty-five years at hard labor for the crime of armed robbery charged in the fourth count. See Error Patent review for discussion of multiple offender sentencing.
[4] Ms. Frazier stated that Freddie Carter is her children's father. She further testified that he was incarcerated on December 31, 2004.
[5] U.S. Const., 6th Am.; La. Const. Art. I, § 16.
[6] Subpart E of Article 701 provides that "just cause" includes "any grounds beyond the control of the State or the Court."
[7] La.C.Cr.P. art. 489 provides that if it is shown, on the defendant's motion, "that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time."
[8] La. R.S. 15:301.1 provides, in part:

The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
[9] By Act 208, 2006, which became effective on June 2, 2006, the legislature amended La. R.S. 14:64.3 adding the term `hard labor' to the sentencing clause of the statute. However, at the time the offenses were committed in this case, La. R.S. 14:64.3 did not have the words "hard labor" in the sentencing clause. The law in effect at the time of the commission of the offense is determinative of the penalty, which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518. Thus, the proper sentence would impose the additional five years "to be served consecutively," but not at hard labor. See State v. King, 06-1903 (La. 10/16/07), 969 So.2d 1228, 1232.