CLARENCE E. McMANUS, Judge.
I ¡(Defendant, Rodney Mason, Jr., was convicted of one count of armed robbery in violation of LSA-R.S. 14:64 (count one), and one count of attempted armed robbery in violation of LSA-R.S. 14:27 and LSA-R.S. 14:64 (count two). After the denial of defendant’s motion for post-verdict judgment of, acquittal and/or new trial, he was sentenced to 55 years imprisonment with the Department of Corrections for his armed robbery conviction and to 50 years imprisonment for his attempted armed robbery conviction. His sentences were ordered to run concurrently with each other. The trial court also noted that the sentence would be without benefit of parole, probation, or suspension of sentence. Defendant’s appeal follows.
The facts adduced at trial proved that on July 6, 2006, Detective Will Stélly of the St. John the Baptist Parish Sheriffs Office responded to a call, which was received at approximately 9:24 p.m., that two subjects, one carrying a shotgun and the other carrying a handgun, robbed the Ole Tyme Saver on Carrollwood in |sLaPlace. Approximately $200.00 in cash was taken from the store’s cashier.
Deputy Jose Rel of the St. John the Baptist Parish Sheriffs Office had also responded to the call. When he arrived, he spoke with the cashier, Phuoc Pham. She advised him that two black males entered the store armed with a handgun and a shotgun. He was advised that both appeared to be wearing long-sleeve white shirts with some type of covering over their faces and heads. One of the suspects was wearing blue jean shorts and the other long pants. Deputy Rel reviewed surveillance videotapes from the store and determined that a white SUV had pulled up in front of the store, pulled off, and then returned. He stated that at first he thought the vehicle was an Expedition, but it was later determined to be an Explorer. He explained that the vehicle had a tannish or golden bottom and had chrome rims.
Once Detective Stelly arrived,' he reviewed the five surveillance videotapes and was able to observe a white Ford Explorer with chrome rims. As such, a bulletin of the vehicle’s description was dispatched. Detective Stelly knew, they were looking for three subjects. He testified that one videotape showed that the driver of the vehicle pulled up and got out. He then entered the store, looked around, and purchased beer. After returning to the vehi *423 cle, the driver then backed up, pulled up even with the door, and stopped for ■ a couple of seconds. Detective Stelly noticed in the tape that someone was seated behind the driver. The second videotape showed the vehicle pulling up. The vehicle was light-colored and the chrome rims could be observed in the vehicle’s reflection. The vehicle then went out of the camera’s view. Detective Stelly explained that by means of investigation, it was discovered that the vehicle was parked next door to the store. The videotape also showed the suspects exiting the store and running in the same direction. Detective Stelly explained that one robber could be seen in another |4videotape by the cash register, wearing a thermal-type long john shirt. The second armed suspect with the long-sleeve black shirt wrapped around his head was seen in another videotape. The customer who called 9-1-1 on his cell was seen in the final videotape.
While patrolling, Deputy Jared Vicknair of the St. John the Baptist Sheriff’s Office received the description of the vehicle involved in the robbery. He testified that based on the vehicle’s description, he “had good knowledge of who the subjects might be in the vehicle.” At 9:55 p.m., approximately 31 minutes after the robbery, a vehicle that matched the description of the vehicle involved in the robbery — a white Explorer with tan on its bottom — was located by Deputy Vicknair in Garyville. Deputy Vicknair got im front of the vehicle and another deputy got behind the vehicle. Deputy Vicknair activated his top lights and his take-down lights. When the deputy attempted to conduct a traffic stop, two suspects exited the backseat from the passenger side of the vehicle and fled into a wooded area. One of the suspects had a white shirt with blue jeans and the other was wearing a white shirt with blue .jean shorts. One of the subjects was observed carrying a shotgun. The driver of the vehicle was detained. Detective Stelly testified that the driver of the vehicle who was arrested was the same person that was seen on the videotape getting out of the vehicle and walking into the store prior to the robbery. A search of the area was conducted for the two other subjects. However, they were not located that evening. The vehicle was towed. •
On the following day, a search warrant for the vehicle was obtained and was executed. Crime Scene Investigator Kirt Tregre lifted ten latent fingerprints from various locations on the vehicle. Some fingerprints were lifted from the rear driver’s side door. Rebecca Alexander, an expert in latent fingerprint analysis, examined the ten latent fingerprints that were presented to her. She compared |Bthese fingerprints to defendant’s fingerprint card. Fingerprints from the exterior side of the back driver’s side door taken from the vehicle were identified as defendant’s fingerprints. The fingerprints matched defendant’s left ring finger. Ms. Alexander explained that no two fingerprints are alike.
Further, items of interest were recovered from inside of the vehicle on the back passenger seat: a white, long-sleeve, long john shirt; a short-sleeve dark blue t-shirt with white lettering on it; and a long-sleeve black pullover that was consistent with what one of the robbers used to conceal his identity. No firearms were found in the vehicle.
Detective Stelly testified that the white shirt that was recovered from the vehicle was consistent with the shirt seen in the videotape.' He stated that the blue short-sleeve shirt'that was recovered was consistent with the garment that was seen in the videotape that was wrapped around the cash register robber’s head. He testified that the black long-sleeve shirt was seen in a videotape as well.
*424 The testimony at trial does not reveal the details of how the other two suspects were arrested. However, Detective Stelly testified that there were three suspects and three arrests were made in this case. After defendant was arrested, a search warrant was obtained for his DNA. Two buccal swabs were taken and some of his hair was plucked. These were sent to' the Crime Lab for analysis. Alison Saadi, an expert in the field of DNA analysis, testified that she compared the reference DNA samples from defendant to DNA profiles obtained from the clothing evidence. She explained that State’s Exhibit 7, the Levi’s short-sleeve shirt was tested for DNA and there was a DNA mixture from two different people found on the shirt. Defendant could not be excluded as being the major contributor in this sample. Ms. Saadi explained that 96.5 percent of the population could be excluded as contributing this profile, but defendant could not be excluded. Further, La white long john shirt was swabbed and DNA was found that was consistent with defendant’s reference sample. Ms. Saadi explained that the probability of finding the exact DNA profile in the population other than defendant would be one in 1.64 trillion. She testified that the world’s population was only' approximately six billion.
Ms. Pham, an owner of the Old Tyme Saver and a victim who was robbed when working at the cash register, testified that on July 6, 2006, two men came into the store and one of them put a gun to her head and demanded money. She gave the robber all of the money in the cash register. She explained that she did not see their faces because they were covered with something. She said that the other subject put the “long” weapon on the customer that was in the store.
Daniel Madere testified that on the night of July 6, 2006, he stopped at a convenience store and while he was there two black males entered the store with guns. He testified that one of the subjects had a shotgun with a barrel that had been “kind of sawed off’ and tried to rob him. The subject told him to give him his money or'Wallet. Mr. Madere told the subject “no,” and the subject walked away. Nothing was taken from Mr. Madere. He also saw the other subject at the cash register with a handgun. Mr. Madere testified that this subject was telling the cashier to give him the money and he said the cashier complied. He did not see their faces because they had a black “T-shirt or something” wrapped around their faces. He called 9-1-1.
Defendant’s mother, Stephanie Davis, was the sole defense witness to testify. She testified that her son’s cousin owned a white and tan SUV and her son was with him at times. She said that there was a party on July 6, 2006, for a family member. She testified that her son’s cousin left the party in the SUV without her son, and that she left the party before her son left.
|7In his first allegation of error, defendant alleges that the evidence was insufficient to find him guilty. Defendant argues that identity is an essential element of the crimes and that the State failed to prove he was involved in the crimes.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence may be either direct or circumstantial. State v. Williams, 05-59, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. In the absence of internal contradiction or irreconcilable conflict with *425 the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). The reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Harris, 07-124, p. 10 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 194.
To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon. State v. Thomas, 08-813, p. 6 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606, writ denied, 09-1294 (La.4/5/10), 31 So.3d 361 (citing LSA-R.S. 14:64(A); State v. Ragas, 07-3, p. 7 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732, cert. denied, — U.S. -, 129 S.Ct. 55, 172 |sL.Ed.2d 56 (2008)). A gun used in connection with, and at the scene of a robbery, is as a matter of law a dangerous weapon. Thomas, supra.
An attempt occurs when the offender, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object. State v. Robinson, 07-832, pp. 15-16 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 867, writ denied, 08-1086 (La.12/19/08), 996 So.2d 1132 (quotation omitted). See also LSA-R.S. 14:27.
Property that is taken is considered under the victim’s control when the victim could have prevented the taking had he not been subjected to the .robber’s violence or intimidation. State v. Martin, 07-1035, p. 6 (La.App. 5 Cir. 10/28/08), 996 So.2d 1157, 1160 (citing State v. Mason, 403 So.2d 701, 704 (La.1981)). The State need not prove that the property taken was owned by the victim, but only that the accused was not the owner and the victim had a greater right to the item than the accused. Martin, supra. Furthermore, the act of pointing a gun at a victim is sufficient to prove the element of force or intimidation for purposes of armed robbery. Id.
Nothing was taken from Mr. Madere and it appears that the evidence presented reflected that defendant would have been the subject that was demanding money from the cash register. Nevertheless, a defendant need not personally take anything from a victim during the armed robbery, a person need not hold the weapon or perform the taking to be guilty of armed robbery under the law of principals. See State v. Butler, 07-1034, pp. 9-10 (La.App. 5 Cir. 10/28/08), 997 So.2d 631, 637, unit denied, 09-0212 (La.10/30/09), 21 So.3d 276! Under LSA-R.S. 14:24, “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to |9commit the crime, are principals.” Only those persons who “knowingly participate in planning or execution of. a crime” are principals to that crime. State v. King, 06-554, pp. 7-8 (La. App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 07-0371 (La.5/4/07), 956 So.2d 600 (quotation omitted). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. King, supra. The mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. Id. However, it is sufficient encouragement *426 that the accomplice is standing by at the crime scene ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s, intention. State v. Anderson, 97-1801, p. 3 (La.2/6/98), 707 So.2d 1223, 1225 (per curiam) (quotation omitted).
In addition to proving the statutory elements of the charged offense at trial, the State is Required to prove defendant’s identity as the perpetrator. State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
Defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction, but rather contends the State failed to prove beyond a reasonable doubt his identity as the perpetrator. Because defendant does not challenge the statutory elements of armed robbery or attempted armed robbery, the sufficiency of the evidence with respect to the statutory elements will 1 innot be addressed [1]. See State v. Duncan, 09-232, pp. 8-9 (La.App. 5 Cir. 11/10/09), 28 So.3d 410, 415-16; State v. Weather spoon, 06-539, pp. 5-6 (La.App. 5 Cir. 12/12/06), 948 So.2d 215, 220, unit denied, 2007-0462 (La.10/12/07), 965 So.2d 398.
In the present case, the witnesses did not see the faces of the perpetrators because their faces and heads were covered. As such, the State was required to show other evidence that defendant was somehow linked to the crimes committed at the store. We find that the State presented sufficient evidence to prove defendant was the person who committed these crimes beyond reasonable doubt.
The crimes in this case were actually captured by the store’s five surveillance cameras. By viewing the videotapes at trial, the jury was allowed to observe the robbery and attempted robbery themselves. In fact, the videotape closest to the cash register was capable of capturing sound. As such, the jury heard for themselves the demands made by the robber for the money in the cash register. Although the jury was also not able to view the perpetrators’ faces because they were covered, the videotapes did show the vehicle that was used in the commission of the crimes. The videotapes also showed the weapons used and the clothing worn by the perpetrators. After the bulletin of the vehicle of interest was dispatched, a vehicle matching this description was located. This vehicle was located in nearby Gary-ville, only 31 minutes after the robbery, which happened in LaPlace[2].
The vehicle was stopped, and two of the three passengers fled, one carrying a shotgun. Also one of the passengers that fled was wearing blue jeans and the |nother was wearing blue jean shorts. The jury was aware that a shotgun was involved in the perpetration of the crimes and that one of the suspects had on blue jean shorts, *427 while the other was wearing long pants. The driver of the vehicle was apprehended, and the vehicle was searched after a search warrant was obtained. . Although the two individuals who fled were not found that night, evidence was left behind in the vehicle and was discovered during the search. Besides the vehicle matching the description of the vehicle involved in the robbery, clothing was discovered in the vehicle that matched the clothing worn by the perpetrators and used to hide their faces during the robbery.
Detective Stelly testified that the man seen in the videotape getting out of the vehicle and walking into the store 18 minutes before the robbery was the driver of the vehicle that was arrested in Garyville. Detective Stelly also identified a white waffle type shirt that was recovered from the vehicle. He explained that it was consistent with the shirt worn by the robber in the video. He also identified a blue short-sleeved shirt that was found in the vehicle that was consistent with the garment seen in the video that was wrapped around the robber’s head when he was at the cash register with the handgun. These same two exhibits were tested for DNA.
An expert in DNA analysis determined that the white long john shirt contained a DNA profile that was consistent with defendant’s. She explained that the probability of finding the exact DNA profile in the population, other than defendant, would be 1 in 1.64 trillion. Further, the short-sleeve Levi’s shirt was tested, for DNA and it was concluded that there was a mixture of DNA. The expert explained that defendant could not be excluded as being a major contributor to this sample and that 96.5 percent of the population could be excluded. Therefore the clothing found in the vehicle that was linked to defendant matched the clothing [ 12worn by the robber who demanded money while standing by the cash register. Furthermore, evidence was presented that the other perpetrator had a long-sleeve black shirt wrapped around his-head. A black long-sleeve pullover was also found in the back passenger seat of the vehicle.
Although this: Court is able to view the clothing worn- by the perpetrators by reviewing the videotapes and is able to review testimony that describes the clothing that was actually recovered from the vehicle, the jury- was able to view the actual clothing that'was-found in the vehicle and that was tested for DNA when the clothing was admitted as evidence at the trial. Because they also reviewed the videotapes, the jury was able to compare the clothing observed during the robbery and attempted robbery with that clothing recovered from the vehicle. In addition, defendant’s fingerprints were found on the exterior of the vehicle’s backseat, driver’s side door. The perpetrator who robbed the cashier exited from this door of the vehicle.
We conclude that the evidence of defendant’s identity as a perpetrator of the crimes negated any possibility of misiden-tifieation. We find no merit to defendant’s claim that the State presented insufficient evidence to sustain his conviction beyond a reasonable doubt.
In his second assignment of error, defendant argues -his sentences were unconstitutionally excessive because he was only 18 years old at the time of the offense and no evidence was presented that he wielded -a gun, actively participated in the crime, or that he was even present.
Defendant did not file a motion to reconsider sentence in the trial court. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitu *428 tional excessiveness. Ragas, 07-3 at 10, 960 So.2d at 272; see also LSA-jC.Cr.P.13 art. 881.1[3]. As such, defendant is limited to a review of his sentence for constitutional excessiveness only.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. War-mack, 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104,109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. Id,, 07-311 at 7-8, 973 So.2d at 109.
In considering whether the sentencing court abused its discretion, the reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. State v. Pearson, 07-332, pp. 15-16 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular ease. Therefore, the trial judge is given broad discretion in sentencing. State v. Williams, 03-3514, p. 14 (La.12/13/04), 893 So.2d 7, 16.
The offense of armed robbery carries a sentencing range of not less than ten years and not more than 99 years, without benefit of parole, probation or 114suspension of sentence. LSA-R.S. 14:64(B). Defendant was sentenced to 55 years imprisonment for armed robbery.
In the present case, on July 13, 2009, prior to sentencing, the trial judge indicated that a Pre-Sentence Investigation (PSI) was completed and that guidelines were taken into account. The court found that there was an undue risk that during the period of a suspended sentence of probation that defendant would commit another crime, that defendant was in need of correctional treatment that could be provided most effectively by his commitment, and that a lesser sentence would deprecate the seriousness of defendant’s crime. The court considered the nature of the crime and noted that a weapon was used, that there was a threat or actual violence in the commission of the crime, and that multiple victims were present at the scene. The court considered the record and the PSI, and then sentenced defendant to 55 years imprisonment on the armed robbery conviction and 50 years imprisonment on the attempted armed robbery conviction. The court ordered that the sentences run concurrently with one another. The judge also noted that “the statute” provided that the imposition be without benefit of parole, probation, or suspension of sentence.
The Louisiana Supreme Court has stated that sentences of 35 to 50 years were found to be acceptable for first offenders convicted of armed robbery. State v. Duncan, 09-232, p. 11 (La.App. 5 Cir. *429 11/10/09), 28 So.3d 410, 417 (citing State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4).
Here, the trial court had the benefit of considering a PSI that was prepared in this matter. However, the PSI was not included with the record. A fingerprint card used to compare defendant’s fingerprints to the fingerprints lifted from the vehicle was presented at trial as State’s Exhibit 12. This fingerprint card appears to reflect that defendant was arrested on March 1, 2006, for attempted second | ifidegree murder, aggravated assault, and illegal use of weapons/dangerous instru-mentalities. Further, the record reflects that after defendant’s sentences were imposed, the State nolle prossed four other matters: case numbers 08-15, 06-115, 07-562, and 07-182. A trial judge is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence of pri- or arrest records and of uncharged offenses or offenses that were nolle prossed. State v. Monk, 42,067, p. 3 (La.App. 2 Cir. 5/2/07), 956 So.2d 185, 188.
The evidence presented shows that defendant is not someone who has no criminal history. Nevertheless, even sentences above the minimum for first armed robbery offenders have been upheld in this circuit. State v. Lee, 09-37, p. 8 (La.App. 5 Cir. 5/12/09), 15 So.3d 229, 234. For example, in State v. Jackson, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, unit denied, 05-1740 (La.2/10/06), 924 So.2d 162, a 19-year-old defendant received concurrent 60-year sentences for two armed robberies. This Court upheld the sentences as not constitutionally excessive.
The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Warmack, 07-311 at 8, 973 So.2d at 109. Armed robbery is a most serious crime and should be dealt with very sternly. Lee, 09-37 at 9, 15 So.3d at 234. This incident involved more than one victim and the opportunity that other customers could have entered the store while the robbery was in progress. It is apparent that a firearm was used in the commission of the robbery of the cashier. However, defendant was not charged with the additional penalty pursuant to LSA-R.S. 14:64.3(A), which provides for an additional penalty when the dangerous weapon used in the commission of an armed robbery is a firearm. , Nevertheless, this Court has | ^recognized that an armed robbery with a firearm is a . more serious form of armed robbery for which the penalty range is effectively. 15 to 104 years. State v. George, 09-886 p. 17 (La.App. 5 Cir. 3/23/10), 39 So.3d 671, 682. This Court has further recognized that during an armed robbery or an attempted armed robbery, when firearms are involved, the victims were placed in -very grave danger and could have easily been killed. See State v. Robinson, supra, 07-832 at 10, 984 So.2d at 869.
We find that defendant’s 55-year sentence for armed robbery is not excessive under the circumstances of this case. The trial court did not abuse its discretion in sentencing defendant to just over half of the maximum sentence allowed for armed robbery.
Defendant also was sentenced, to 50 years for the attempted armed robbery conviction. Defendant’s argument focuses on the excessiveness of the longer 55-year sentence and not the 50-year sentence was ordered to be served concurrent with. The 50-year attempted armed robbery sentence is illegal and beyond the maximum term of imprisonment allowed under the statutes. See LSA-R.S. 14:64; R.S. 14:27. Accordingly, any further discussion *430 regarding the excessiveness of this sentence is moot.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which warrant our attention.
In the present case, the offense of armed robbery carries a sentencing range of not less than ten years and not more than 99 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64(B). The attempt provision provides in pertinent part that the defendant shall be fined or imprisoned in the same manner as for the offense attempted, and such imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense so 117attempted. LSA-R.S. 14:27(D)(3). Thus, in this case, the maximum sentence to which defendant could be sentenced for armed robbery was 99 years and for attempted armed robbery was 49 1/2 years. However, defendant was sentenced to 50 years imprisonment for attempted armed robbery.
Pursuant to LSA-C.Cr.P. art. 882, an appellate court can correct an illegal sentence at any time. However, an appellate court is authorized to correct an illegal sentence when the exercise of sentencing discretion is not involved. State v. Durar pan, 01-511 (La.App. 5 Cir. 10/30/01), 800 So.2d 1052, 1054. Therefore, we vacate the 50 year sentence for attempted armed robbery and we remand the matter to the district court for resentencing pursuant to the statutes. See State v. Ross, 09^131, pp. 25-26 (La.App. 5 Cir. 11/24/09), 28 So.3d 475, 489-90 (where the matter was remanded for resentencing after the defendant received illegal sentences above the maximum term of imprisonment allowed under LSA-R.S. 14:81).
Considering the foregoing, defendant’s convictions are affirmed. Defendant’s 55 year sentence for armed robbery is also affirmed. Defendant’s 50 year sentence for attempted armed robbery is vacated and this matter is remanded for resentenc-ing in accordance with the views expressed in this opinion.

AFFIRMED IN PART; VACATED IN PART; REMANDED.

. Our review of the record reflects that the State presented sufficient evidence to establish the essential statutory elements of the offenses through testimony and by means of the videotapes presented at trial.

. Judicial notice is governed by LSA-C.E. art. 201. This Court has previously recognized that the jurisprudence shows that courts have taken judicial notice of geographical distances. See State v. Young, 04-1318, p. 8 (La.App. 5 Cir. 4/26/05), 902 So.2d 461, 466 n. 6.

. According to LSA-C.Cr.P. art. 881.1(E), the "[Qailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”