SUSAN M. CHEHARDY, Judge.
 

 |2On appeal, defendant challenges his convictions and sentences. For the following reasons, we affirm his convictions but remand for resentencing.
 

 Facts and Procedural History
 

 In the early morning hours of September 29, 2007, Nicole Gant stood in her aunt’s yard, which is across the street from JJ’s Bar in Gramercy, talking to Eldridge Johnson and another man that she did not know. The stranger, who wore his hair in “cornrows,” wore black pants, a white shirt with black writing, and a black do-rag. After Ms. Gant took offense at a comment from Mr. Johnson, Ms. Gant left and went down the street to her mother’s house.
 

 Meanwhile, Lanny Thomas and Freddie Williams were standing in front of JJ’s Bar talking when Paulette Bauman pulled up in front of the establishment. As Ms. Bauman exited her car, a “guy” approached Ms. Thomas asking for a light for his cigarette. After Ms. Thomas lit his cigarette, the man walked away.
 

 Almost immediately, however, the man turned back toward the trio with a gun in his hand, demanding that the women hand over their purses. Ms. Bauman happened to be carrying jewelry in her purse, including her son’s ring and earring |3and two of her rings. After Ms. Thomas and Ms. Bauman complied, the man put the gun in Mr. Williams’ face and demanded his wallet. After pilfering their property, the man ran away.
 

 Officer Alexander Gerhold of the Gram-ercy Police Department responded to an armed robbery call at approximately 12:16 a.m. on September 29, 2007. He spoke to Ms. Thomas, Ms. Bauman, and Mr. Williams who all gave him a description of the assailant: a black male in his late 20s or early 30s with a dark complexion, wearing a white t-shirt, dark colored jeans, a black do-rag or stocking cap on his head, with cornrows or braids in his hair. Officer Gerhold relayed this description to deputies who canvassed the area, but they were unsuccessful in locating the suspect. One day later, Detective Brett Forsythe of the St. James Parish Sheriffs Office was advised that the Gramercy Police Department received a tip from an anonymous caller that Joe Brown, later identified as defendant herein, had committed the armed robbery outside of JJ’s Bar.
 

 On October 1, 2007, Detective Forsythe compiled a photographic lineup and showed it to Ms. Gant and the victims. Ms. Gant positively identified defendant in the photographic lineup as the individual
 
 *551
 
 who was standing with her and Mr. Johnson in her aunt’s yard before the robbery. Ms. Bauman and Ms. Thomas could not identify their assailant on that date because they were scared. However, in separate interviews two days later, Ms. Bau-man and Ms. Thomas positively identified defendant in the photographic lineup. Further, in court, Ms. Bauman, Ms. Thomas, and Mr. Williams each positively identified defendant as their assailant.
 

 On October 3, 2007, Detective Forsythe obtained an arrest warrant for defendant then contacted Detective Jerry Fountain of the St. John Parish Sheriffs Office for assistance in locating and arresting defendant. On information from Rdefendant’s parole officer, Detective Fountain and other members of the St. John Parish Sheriffs Office went to 192 Emmett Court in Laplace in an attempt to locate defendant.
 

 As soon as the officers knocked on the door at 192 Emmett Court, they heard someone inside moving quickly toward the rear of the trailer. After several more minutes of knocking, the tenant of the trailer, Candi Ross, who was defendant’s “on-again, off-again girlfriend,” answered the door. Ms. Ross told the officers that defendant was not in her trailer.
 

 When the officers asked Ms. Ross if they could come in and look around, she asked if they had a “paper.” Detective Fountain told Ms. Ross that he had an arrest warrant for defendant. When the officers stepped inside the trailer to talk to Ms. Ross, Detective Fountain heard movement coming from the rear of the trailer. Sergeant Brooks stayed in the living room and talked to Ms. Ross, while Detective Fountain went to the back of the trailer. When he got back there, Detective Fountain found defendant hiding in a closet under a pile of clothes.
 

 Detective Fountain placed defendant under arrest. Detective Forsythe arrived and asked Ms. Ross for her written consent to search the residence, which she gave. Prior to starting the search, Ms. Ross informed Detective Forsythe that defendant had given her a ring, which she had taken to Royal Jewelers in Laplace to be appropriately sized. She produced a receipt from Royal Jewelers and turned it over to him.
 

 In the bedroom where defendant was found, the officers observed a large white plastic bag on the floor, which Ms. Ross stated belonged to defendant. Inside the bag, the officers located a black do-rag, a white t-shirt, and two pairs of dark-colored jeans, clothing which matched the description of the clothing worn by the perpetrator of the armed robbery. When he picked up the jeans, Detective |5Forsythe heard metal clanking together so he searched the pockets and found two rings and an earring. Later, Ms. Bauman positively identified those two rings and the earring found in the pants pocket and the ring retrieved from Royal Jewelers as jewelry that was in the purse stolen from her during the armed robbery.
 

 On October 4, 2007, Loretta Jackson, defendant’s mother, called Detective For-sythe with information about the armed robbery. In her statement, Ms. Jackson reported that defendant admitted to her that he had committed the robbery; however, at trial, she denied stating that defendant admitted to the robbery. At trial, Ms. Jackson stated that her son only told her, “If you said I did it, I did it.” Detective Forsythe testified, that during an interview, defendant admitted that he was in possession of the rings but stated that he received the rings from a “crackhead” to pay for crack cocaine.
 

 On November 21, 2007, the St. James Parish District Attorney filed a bill of information charging defendant, Joe Brown,
 
 *552
 
 III, with three counts of armed robbery in violation of La. R.S. 14:64. After a hearing on December 8, 2008, the trial judge . denied defendant’s motion to suppress statements, evidence, and identification.
 

 On January 18, 2009, trial of this matter commenced. The next day, the twelve-person jury found defendant guilty as charged. After a hearing, the trial judge denied defendant’s motion for new trial on January 11, 2010. Also, on that date, defendant waived sentencing delays, and the trial judge sentenced defendant to imprisonment at hard labor for 60 years without benefit of parole, probation, or suspension of sentence on each count to run concurrently.
 

 On February 10, 2010, defendant filed a timely motion for appeal, which was granted. Subsequently, defendant filed a motion to reconsider sentence, which was denied after a hearing on March 8, 2010.
 

 |r,On appeal, defendant raises two counseled assignments of error and one
 
 pro se
 
 assignment of error. In his first counseled assignment of error, defendant argues that the trial court erred in denying the motion to suppress the identification. Specifically, defendant asserts that none of the three people robbed outside the bar positively identified him when Detective Forsythe showed them the lineup the first time but all of them identified him when they viewed the lineup the second time. Defendant contends that the identifications were tainted and unreliable so they should have been suppressed. The State responds that the trial judge did not err by denying the motion to suppress, noting that there was nothing in the record to substantiate that the photographic lineup was suggestive, unreliable, or tainted.
 

 When challenging an out-of-court identification, a defendant generally bears the burden of proof at the hearing on the motion to suppress identification. La. C.Cr.P. art. 703(D). In order to suppress an identification, a defendant must first prove that the identification procedure was suggestive.
 
 State v. Higgins,
 
 03-1980, p. 19 (La.4/1/05), 898 So.2d 1219, 1232,
 
 cert. denied,
 
 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Even when the suggestiveness of the identification process is proved by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the procedure.
 
 State v. Broadway,
 
 96-2659, p. 19 (La.10/19/99), 753 So.2d 801, 812,
 
 cert. denied,
 
 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000);
 
 State v. Peden,
 
 04-71, p. 11 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 942.
 

 Under
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the factors that courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of mis-identification include: the witness’ opportunity to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the prior description |7of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.
 
 State v. Honore,
 
 09-313, pp. 19-20 (La.App. 5 Cir. 1/12/10), 31 So.3d 485, 497. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977);
 
 State v. Evans,
 
 03-0752, p. 22 (La.App. 5 Cir. 12/9/03), 864 So.2d 682, 695,
 
 writ
 
 denied, 04-0080 (La.5/7/04), 872 So.2d 1079.
 

 In evaluating the defendant’s argument, the reviewing court may consider all pertinent evidence adduced at the trial,
 
 *553
 
 as well as at the hearing on the motion to suppress the identification.
 
 State v. Clennon,
 
 98-1370, p. 6 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164. A trial court’s determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.
 
 Id.
 

 In this case, defendant argued in his motion to suppress that the photographic lineup was unduly suggestive or otherwise unfair because the photographs showed individuals with various hairstyles and different color complexions, which contributed to a substantial likelihood of mis-identification. On appeal, defendant does not raise that argument. Rather, defendant argues on appeal that the motion to suppress should have been granted because, first, the victims did not positively identify him the first time, and, second, Chief Dicharry coerced the identification from Ms. Bauman.
 

 On appeal, however, a defendant is limited to the grounds for objection that he articulated in the trial court and a new basis for the objection may not be raised for the first time on appeal.
 
 State v. Taylor,
 
 04-346, p. 9 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 594. This Court reviews issues that have first been submitted to the district court for a ruling. U.R.C.A. 1-3. Since defendant did not | ^object in the trial court to the identification on these grounds and, thus, the issue has not been submitted to the district court, he is precluded from raising those issues now on appeal.
 

 Furthermore, even if we were to consider the merits of defendant’s claims, we would find no error. First, there is no evidence that the photographic lineup was suggestive. A review of the photographic lineup shows that all six African-American males had similar hairstyles, mustaches, and facial features. Three of the men, including defendant, wore white t-shirts. Although the skin complexions and backgrounds in the photographs are slightly different, the lineup did not unduly focus attention on defendant.
 
 See State v. Thomas,
 
 06-654, p. 6 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 377,
 
 writ denied,
 
 07-464 (La.11/21/07), 967 So.2d 1153 (although the subjects’ mustaches varied in thickness, the photographic lineup did not unduly focus attention on defendant, where it consisted of six photographs of African-American men with similar hairstyles and facial features, the backgrounds of the photographs were similar, and three of the men, including defendant, were shown wearing white t-shirts).
 

 Even assuming,
 
 arguendo,
 
 that the lineup was suggestive, we find, based on the
 
 Manson
 
 criteria, that defendant has failed to show a substantial likelihood of misidentification as a result of the procedures. Both Ms. Bauman and Ms. Thomas had the opportunity to view the criminal at the time of the crime, similarly described the criminal and his clothing, were certain at the second confrontation that defendant was the perpetrator, and the time between the crime and the confrontation was relatively short (four days).
 

 Additionally, defendant has cited no authority to support his contention that the inability of a witness to make an identification the first time they view a photographic lineup means that the identification is unreliable. Moreover, Ms. |9Bauman, Ms. Thomas, and Mr. Williams all positively identified defendant in court as the perpetrator. In light of the foregoing, we decline to address defendant’s argument since it was not raised in the district court. However, even if we were to address the merits, we would find no error in the trial
 
 *554
 
 court’s denial of defendant’s motion to suppress the identifications.
 

 In his second counseled assignment of error, defendant contends that the trial court erred in failing to grant the defense motion to reconsider the sentence as excessive. Defendant contends that his sixty year sentence is excessive in light of his non-violent criminal history and drug addiction. Defendant further contends that the imposition of a sixty-year sentence after he was offered 10 years at the close of the State’s case punishes him for exercising his right to a jury trial.
 

 The State responds that the trial judge did not abuse her sentencing discretion, and, based on defendant’s criminal history of three previous felony offenses, the sentence is neither a purposeful or needless imposition of pain or suffering, nor grossly out of proportion to his crime. The State contends that the sentence is constitutionally, statutorily, and jurisprudentially firm.
 

 On January 11, 2010, the trial judge sentenced defendant to sixty years at hard labor on each of the three counts to run concurrently, without benefit of parole, probation, or suspension of sentence. The trial judge noted that defendant had a long history of substance abuse and had admitted to smoking marijuana since the age of 16. Further, the trial judge noted that this was defendant’s third felony offense, with previous convictions for possession with the intent to distribute crack cocaine and for theft over $500.00. With respect to La.C.Cr.P. art. 894.1, she believed that there was an undue risk that during a period of a suspended sentence or probation, defendant would commit another crime, that defendant was in need of correctional treatment or a custodial environment that could be provided most | ineffectively by his commitment to an institution, and that a lesser sentence would deprecate the seriousness of defendant’s crime.
 

 On February 10, 2010, defendant filed a motion to reconsider sentence arguing that his sentence was excessive and that the trial judge arbitrarily formulated his sentence using a pre-sentence investigation without properly considering the mitigating factors outlined in La.C.Cr.P. art. 894.1. The trial judge denied the motion to reconsider sentence.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Smith,
 
 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 Id.
 
 A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Lawson,
 
 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
 

 A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 State v. Dorsey,
 
 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130.
 

 La.C.Cr.P. art. 894.1(C) requires the trial judge to state for the record the considerations taken into account and the factual basis when imposing the sentence. However, when there is an adequate factual basis for the sentence contained in the record, the trial court’s failure to articulate every circumstance listed
 
 *555
 
 in La.C.Cr.P. art. 894.1 does not require a remand for resentencing.
 
 State v. Sanders,
 
 98-855, p. 5 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1279,
 
 writ denied,
 
 99-1980 (La.1/7/00), 752 So.2d 175. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 State v. Pearson,
 
 07-332, p. 15-16 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
 

 Here, defendant was convicted of three counts of armed robbery in violation of La. R.S. 14:64. Whoever commits armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation or suspension of sentence. La. R.S. 14:64. The trial judge sentenced defendant to three concurrent sixty-year sentences.
 

 This Court has upheld similar sentences for similarly-situated defendants. In
 
 State v. Mason,
 
 10-284 (La.App. 5 Cir. 1/11/11), 59 So.3d 419,
 
 writ denied,
 
 11-0306, 64 So.3d 216 (La.2011), defendant and a co-defendant robbed a convenience store cashier. Even though there was no physical injury and no discharge of the weapon during the incident, this Court found that the 18-year-old defendant’s 55-year sentence for armed robbery was not excessive, noting that defendant had a criminal history; the charged offense involved more than one victim and the opportunity that other customers could have entered the store while the robbery was in progress; and a firearm was used in the commission of the robbery.
 
 Id.,
 
 10-284 at 13-16, 59 So.3d at 427-29.
 

 Likewise, in
 
 State v. Jackson,
 
 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907,
 
 writ denied,
 
 05-1740 (La.2/10/06), 924 So.2d 162, defendant and two co-defendants robbed a bank; however there was no physical injury and no discharge of the weapon. Defendant was convicted of 2 counts of armed robbery and sentenced to 2 concurrent 60-year sentences. This Court found that the sentence | ,2was not constitutionally excessive, stating that although defendant was 19 years old and a first time offender, he went on a 3-day violent crime spree, and the victims had guns pointed at them during the robbery which placed them in fear for their lives.
 
 Id.,
 
 04-1388 at 16-17, 904 So.2d at 917.
 

 In the instant case, we find that defendant’s sentences are not excessive. The record reflects that the trial judge adequately reviewed the factors listed in La. C.Cr.P. art. 894.1 prior to imposing sentence. Moreover, the jurisprudence supports the sentence imposed. In light of the foregoing, we find that the trial judge did not abuse its discretion by imposing concurrent sixty-year sentences for a defendant with two previous felony offenses who robbed three people at gunpoint in front of a busy neighborhood bar. This assignment lacks merit.
 

 In his sole
 
 pro se
 
 assignment of error, defendant challenges the effectiveness of his trial counsel. Generally, he questions “[wjhether Trial Counsel’s Representation ‘fell below a reasonable objective standard of competent professional attorney in violation of both the State and Federal Constitution?”[sic]. However, specifically, defendant argues:
 

 a) ‘Counsel failed to object to State’s improper closing-argument regarding ‘personal knowledge’ of defendant’s guilt and having ‘additional evidence of defendant’s guilt not placed before the jury’;
 

 b) ‘Counsel failed to object to State’s ‘intentional mischaracterization of the evidence’;
 

 
 *556
 
 c) ‘Counsel failed to object and request mistrial from the State’s improper closing and rebuttal-argument regarding “hearsay” evidence to prove the substantive guilt of defendant’.
 

 A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that: (1) his attorney’s performance was deficient; and (2) the deficiency prejudiced him.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984);
 
 State v. Soler,
 
 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075,
 
 writs denied,
 
 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.”
 
 Strickland v. Washington,
 
 466 U.S. at 687, 104 S.Ct. at 2064;
 
 State v. Serio,
 
 94-131, p. 4 (La.App. 5 Cir. 7/1/94), 641 So.2d 604, 607,
 
 writ denied,
 
 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.
 
 Strickland v. Washington,
 
 466 U.S. at 694, 104 S.Ct. at 2068.
 

 Generally, an ineffective assistance of counsel claim is best addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 State v. Taylor,
 
 04-346, p. 10 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. Here, we find the appellate record is adequate for this Court to address defendant’s claims.
 

 La.C.Cr.P. art. 774 requires that closing arguments at trial be confined “to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” Closing arguments shall not appeal to prejudice. La.C.Cr.P. art. 774. The State’s rebuttal shall be confined to answering the argument of the defendant. La.C.Cr.P. art. 774.
 

 The trial judge has broad discretion in controlling the scope of closing arguments.
 
 State v. Taylor,
 
 07-93, p. 31 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103,
 
 writ denied,
 
 07-2454 (La.5/9/08), 980 So.2d 688. A conviction will not be | ^reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
 
 State v. Jackson,
 
 04-293, pp. 5-6 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73,
 
 writ denied,
 
 05-0232 (La.5/6/05), 901 So.2d 1094. In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence.
 
 Jackson,
 
 04-293 at 6, 880 So.2d at 73.
 

 An improper comment during closing argument falls within the ambit of La.C.Cr.P. arts. 770 and 771.
 
 [1]
 
 These arti
 
 *557
 
 cles authorize the trial court to correct a prosecutor’s prejudicial remarks by ordering a mistrial or admonishing the jury, upon the defendant’s request.
 
 State v. Taylor,
 
 07-93 at 31-32, 973 So.2d at 103. La.C.Cr.P. art. 770 reads:
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
 

 (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
 

 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
 

 (3) The failure of the defendant to testify in his own defense; or
 

 (4) The refusal of the judge to direct a verdict.
 

 An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, | isrequests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
 

 A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.
 
 State v. Lagarde,
 
 07-123, p. 10 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113,
 
 writ denied,
 
 07-1650 (La.5/9/08), 980 So.2d 684.
 

 First, defendant argues that his trial counsel was ineffective because she failed to object and move for a mistrial during rebuttal closing argument after the prosecutor made comments relating to, first, his personal knowledge of defendant’s guilt and, second, to additional evidence supporting defendant’s guilt that was not presented at trial. At issue are the following statements made by the prosecutor during rebuttal closing argument:
 

 We know how he [defendant] got it [the victim’s rings]. He got it at gunpoint from Paulette Bauman. He got the wallet at gunpoint from Freddie Williams, and he got Ms. Lanny Thomas’ bag with her valuables in it. It’s unfortunate we only recovered the jewelry. Nothing else was recovered. He had the gun, folks. He had the silver gun. You heard three witnesses testify to that.
 

 Upon review, we cannot say that the prosecutor was expressing his personal knowledge of defendant’s guilt, but rather, he was functioning as a prosecutor by arguing what the State’s evidence showed and responding to defendant’s contention that he did not commit the crime.
 
 See,
 
 La.C.Cr.P. art. 774.
 

 Furthermore, we cannot say that the prosecutor referred to additional evidence not properly admitted at trial. During the proceedings, Ms. Bauman testified that de
 
 *558
 
 fendant took her purse, which contained her rings; Mr. Williams testified that defendant took his wallet; and Ms. Thomas testified that defendant took her purse. All three victims testified that defendant was armed with a gunj^when he demanded their property. Detective Forsythe testified that he recovered Ms. Bauman’s jewelry from defendant’s pants pocket. Thus, we cannot say that counsel was deficient for failing to object during closing arguments to comments that were not objectionable.
 

 Additionally, the prosecutor’s comments do not fall within the scope of La.C.Cr.P. art. 770, mandating a mistrial. Thus, we cannot say that counsel was deficient for failing to move for a mistrial when comments do not fall within the scope of La. C.Cr.P. art. 770.
 

 Second, defendant argues that his trial counsel was ineffective because she failed to object and move for a mistrial when the prosecutor intentionally mischar-acterized the testimony of Loretta Jackson, defendant’s mother. At trial, Detective Forsythe testified that on October 4, 2007, defendant’s mother called him to give a statement because she had information about the robbery. In her statement made at the St. James Parish Sheriffs Office, Ms. Jackson said that defendant admitted to her that he had committed the robberies. At trial, however, she denied that defendant admitted to the robberies instead saying that defendant only said to her, “If you said I did it, I did it.” Ms. Jackson’s statement, State’s Exhibit 7, was admitted into evidence at trial.
 

 During his closing argument, the prosecutor remarked:
 

 Don’t forget about mama. What did Ms. Jackson say? She had to be pressed to say it. I know she didn’t want to say anything that would possibly lead to the conviction of her son, but what did she say? She said she talked to him on the phone, right? What did she say? “I talked to him on the phone, and he said — he admitted it. He did it.” She said further, “I talked to him. He said, ‘Mom, I got something to tell you. I did it.” Mama’s don’t lie. She was scared to say what he had told her, and I understand that, but she did not lie when she gave this statement under oath. She voluntarily came to Detective Forsythe. She came to see him because she had something to tell him.
 

 |17Our review of the prosecutor’s remarks shows that he did not mischaracterize the testimony of Ms. Jackson. Because the prosecutor did not mischaracterize Ms. Jackson’s testimony, defense counsel had not reason to object and cannot be ineffective for failing to object or for failing to move for a mistrial when the prosecutor made those remarks.
 

 Finally, defendant argues that his trial counsel was ineffective because she failed to object or move for a mistrial when the State urged the jury to accept Ms. Jackson’s prior inconsistent statement as substantive evidence of his guilt. The first question is whether the prosecutor urged the jury to accept Ms. Jackson’s prior inconsistent statement as substantive evidence of defendant’s guilt.
 

 During his closing argument, the prosecutor made the above-referenced remarks regarding Ms. Jackson and her statement to Detective Forsythe. During rebuttal, the prosecutor further stated:
 

 Now I’m going to go back to his mama. That was her words under oath given in a taped recorded statement. That wasn’t my words. I didn’t put those words in his mouth, nor did Detective Forsythe. “I talked to him on the phone, and he said — he admitted he did it.” That’s what he told his mom.
 

 
 *559
 
 Upon review, we find that the prosecutor’s remarks could be intended to urge the jury to accept Ms. Jackson’s prior inconsistent statement as substantive evidence of defendant’s guilt.
 

 In this case, defendant’s mother, in her voluntary statement, stated that her son told her that he robbed the victims. The statement was made to detectives during the investigation and provided an identification of the robber. Here, the prior inconsistent statement of this witness constitutes a prior statement of identification for purposes of La. C.E. art. 801(D)(1)(c). Further, this prior inconsistent statement was not hearsay and could be used as substantive evidence 11sof defendant’s guilt under the amended version of La. C.E. art. 801(D)(1)(a), which provides:
 

 D. Statements which are not hearsay. A statement is not hearsay if:
 

 (1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
 

 (a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement;
 

 In
 
 State ex rel. D.W.,
 
 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1058-1060, this Court allowed the prior inconsistent statements of the witnesses to be admitted for their assertive value. In so holding, this Court found that, before the prior inconsistent statements could be accepted as non-hearsay, and, therefore, probative, additional evidence had to corroborate the “matter asserted” or the “facts sought to be proved” by these prior inconsistent statements.
 

 Based on the foregoing, we find that additional evidence did corroborate the facts from the prior inconsistent statements. Two of the victims, Ms. Bauman and Ms. Thomas, positively identified defendant in a photographic lineup as the perpetrator, and all three victims positively identified defendant in court as the perpetrator. Therefore, there would have been no error in the prosecutor urging the jury to accept the prior inconsistent statement as substantive evidence of defendant’s guilt because the prior inconsistent statements could be used for their assertive value in accordance with La. C.E. art. 801(D)(1)(a). Accordingly, there was no objection for the defense counsel to raise and no justification for a motion for mistrial. Because there was no error, defense counsel cannot be ineffective for failing to object to the alleged error. Based on the foregoing, we find no relief is warranted on defendant’s claim of ineffective assistance of counsel.
 

 | ^Finally, defendant requests an error patent review, which is our routine practice in accordance with La.C.Cr.P. art. 920. We note that defendant’s sentence is indeterminate. Here, the State filed a “Notice to Invoke Firearm Sentencing Provisions,” pursuant to La. R.S. 14:64.3. When the State submits sufficient evidence for the trier of fact to find that the offender used a firearm as the dangerous weapon during an armed robbery, under La. R.S. 14:64.3(A), the offender shall be imprisoned for “an additional five-year” period of incarceration without benefit of parole, probation, or suspension of sentence.
 
 [2]
 

 
 *560
 
 The jury verdict sheets show that the jury found defendant guilty of armed robbery with a firearm on each of the three counts. At the sentencing hearing, the trial judge stated that, when the dangerous weapon used in the commission of the armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. However, after defendant was convicted, the trial judge sentenced him to three concurrent terms of sixty years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The trial judge did not state that she was imposing the mandatory five-year period of incarceration at hard labor consecutive to defendant’s sentences.
 

 As such, we find that defendant’s sentence is indeterminate because the trial judge did not specify the sentence imposed pursuant to the firearm enhancement. Accordingly, we vacate defendant’s sixty-year sentences and remand for resentencing to clarify defendant’s sentence with respect to La. R.S. 14:64.3.
 
 See, State v. Declouet,
 
 09-1046, pp. 29-30 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 108-09,
 
 writ denied,
 
 10-2556 (La.4/8/11), 61 So.3d 681;
 
 State v. Price,
 
 04-812, p. 10 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, 618. In all other respects, defendant’s convictions are affirmed.
 

 CONVICTIONS AFFIRMED; REMANDED FOR RESENTENCING
 

 [1]
 

 . La.C.Cr.P. art. 771 states:
 

 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might
 
 *557
 
 create prejudice against the defendant, or the state, in the mind of the jury:
 

 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
 

 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 

 [2]
 

 . La. R.S. 14:64.3 reads: “When the dangerous weapon used in ... the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five
 
 *560
 
 years without benefit of parole, probation, or suspension of sentence. The additional penalty ... shall be served consecutively to the sentence imposed under ... R.S. 14:64.”
 

 [Emphasis added].